UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DAVID JAH,<br><br>　　　　Defendant. | No. CR 19-00026 WHA<br><br>**ORDER RE MOTION TO DISMISS, MOTION TO COMPEL CERTAIN DISCOVERY, AND MOTIONS TO SUPPRESS** |

## INTRODUCTION

In this prosecution for conspiracy to commit arson and possession of a firearm by a prohibited person, the accused fired his lawyers and now, after a *Faretta* hearing, represents

himself. He moves for dismissal, suppression, and to compel discovery. For the foregoing reasons, the motions are **DENIED**.[1]

**STATEMENT**

In late 2018, local law enforcement obtained a search warrant from a superior court judge for a Concord property believed to be defendant David Jah's residence. In November of that year, federal and state officials executed the warrant and seized a firearm, ammunition, and electronic devices. A police incident report stated that an officer presented the warrant, but Mr. Jah contends that, despite requesting it several times, officers failed to present it during or after the search. Officers arrested Mr. Jah. Sometime later, federal law enforcement agents sought and got a federal warrant to crack the electronics (Dkt. 203).

The government charged Mr. Jah, by indictment, with firearm possession by a felon in January 2019. The Court appointed Attorney Ellen Leonida. The next month, the government charged Mr. Jah by complaint (along with a co-defendant, Kristopher Alexis-Clark) with a single new offense, conspiracy to commit arson. Then in March 2019, another grand jury returned a superseding indictment, which charged Mr. Jah with conspiracy to commit arson, Count One, and the firearm charge, which became Count Four. (Alexis-Clark was charged in Counts One, Two, and Three, for conspiracy, arson, and possession of an unregistered firearm.) At a hearing on April 2, 2019, the government was ordered to turn over all discovery by April 30. Later in the year, Attorney Leonida brought a motion to suppress the firearm, ammunition, and electronics. Following an October evidentiary hearing, an order dated June 30, 2020, denied the motion. In December 2019, an order requested a competency evaluation of Mr. Jah and, following receipt of evaluation reports, Mr. Jah was found competent to stand trial (Dkt.s 1, 3, 10, 15, 19, 30, 84, 98, 108, 147).

In June 2020, Mr. Jah filed a *pro se Faretta* motion. Citing Attorney Leonida's refusal to, in part, provide all discovery to him, Mr. Jah sought to "proceed pro per with the assistance of the [f]ederal [d]efender to act as co-counsel, [second] [c]hair in a hybrid defense." Shortly thereafter,

---

[1] These motions, at docket entries 187, 188, 202, and 203, predate the second superseding indictment. Defendant David Jah then amended these motions to comport with the second superseding indictment (Dkt. 208).

Attorney Mark Vermeulen replaced Attorney Leonida. The Court denied the *Faretta* motion without prejudice and allowed Mr. Jah to see how he worked with Attorney Vermeulen (Dkt.s 143, 147).

In September 2020, Mr. Jah asked for sanctions against Attorney Vermeulen for his refusal to bring a motion challenging federal jurisdiction and to suppress the firearm and, soon after, again moved for a *Faretta* hearing. Before the *Faretta* hearing in October 2020, Mr. Jah personally filed the first two motions addressed in this order: a motion to dismiss Count One, at docket entry 187, and a motion to compel discovery at 188. The *Faretta* hearing resulted in a preliminary determination that he was entitled to represent himself based upon his understanding of, among other things, the constitutional right to counsel and his knowing and voluntary waiver of that right. The matter was continued to give Mr. Jah time to think it over and to obtain more information about Mr. Jah's access to legal research while in custody (Dkt.s 161, 176–177, 187, 188, 189).

At the end of October 2020, the government charged Mr. Jah via a second superseding indictment, the now-operative indictment. The indictment alleged conspiracy to commit arson, a violation of 18 U.S.C. Sections 844(i) and (n) (Count One), and possession of a firearm by a prohibited person in violation of 18 U.S.C. Section 922(g)(1) (Count Four). The indictment deleted Mr. Jah's prior co-defendant, Alexis-Clark, but charged a new co-defendant, Dennis Williams, with Counts Two and Three, arson and possession of an unregistered firearm (Dkt.s 197, 209).

In November 2020, following a further hearing and colloquy with Mr. Jah about proceeding *pro se*, the Court granted Mr. Jah's *Faretta* motion. Shortly thereafter, Mr. Jah filed the two other motions addressed in this order. One moves "to dismiss the indictment F.R.C[r].P. 12(b)(2)," because the property subject to the attempted firebombing (the subject property) lacks a nexus to interstate commerce and thus its search violated the Fourth Amendment. The other moves to suppress the firearm and, consequently, "to dismiss Count [Four] 18 U.S.C. §922(g)" (Dkt.s 202, 203).

This order follows full briefing and oral argument.

# ANALYSIS

**1.  MOTION TO DISMISS.**

Federal Rule of Criminal Procedure 12 allows a party "to raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Such defenses, objections, or requests include, "(B) a defect in the indictment or information; including . . . (v) failure to state an offense." FRCrP 12(b)(3).

Mr. Jah moves to dismiss Count One of the second superseding indictment on the ground that indictment contains a defect since the subject property does not sound in interstate or foreign commerce. For the foregoing reasons, the motion is **DENIED**.

Section (n) of the arson statute provides that conspiracy carries the same punishment as the arson itself. The substantive clause, Section 844(i) provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned . . . .

It is true that Section 844 has been held to require the government to establish a connection to interstate commerce. Specifically, the government must "establish specific facts justifying the exercise of federal jurisdiction in connection with any individual application of the statute." *United States v. Lamont*, 330 F.3d 1249, 1253 (9th Cir. 2003). This concept of "jurisdiction" refers to the factual determination of the subject property's ties to interstate commerce, which a jury must evaluate. *See United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993). *Nukida* also held that deciding the nexus to interstate commerce under 18 U.S.C. §1365(a) was therefore impermissible at the Rule 12(b) stage.

Count One alleges that Mr. Jah conspired to firebomb a Danville law office. Mr. Jah argues that the prosecution cannot proceed because of a lack of federal jurisdiction. Mr. Jah does not argue that a law office categorically lacks a nexus to interstate commerce. Instead, he argues, the subject property did not *really* serve as a law office but instead served solely as an owner-occupied residence and therefore fails the nexus test.

4

Following *Nukida*, the question of the subject property's nexus to interstate commerce must go to the jury. The cases on which Mr. Jah relies do not compel otherwise. Mr. Jah cites to *Jones v. United States*, 529 U.S. 848 (2000), which held that the federal arson statute did not reach a particular owner-occupied dwelling. The holding in *Jones* also set forth a two-part test, which requires, *first*, examination of "the function of the building itself, and," *second*, determining "whether that function affects interstate commerce." *Id*. at 855 (internal citations omitted). Here, the government alleges that Mr. Jah conspired to commit arson against a law office, comprised of "a building and real and personal property used in interstate commerce, and used in activity affecting interstate commerce." Mr. Jah appends exhibits that purportedly show the property's owner leased office space elsewhere, advertised a different physical business address on his website, would sometimes work at a Walnut Creek office, and that the subject property was not claimed for a home office tax deduction (Dkt. 187, Exh.s A–C). The IRS classification does not control the property's classification for Section 844(i) purposes. If Mr. Jah can get these facts into evidence at trial, however, he may argue at trial that the subject property did not actually function as a law office. *Jones* does not require dismissal at this stage.

Mr. Jah also urges that the Court distinguish *United States v. Sakhanskiy*, 734 F. App'x 454 (9th Cir. 2018), which held that a property serving as a handyman's home, and from which he ran a business, moved in interstate commerce for the purposes of Section 844(i). He also relies on the articulation of the nexus test in *Russell v. United States*, 471 U.S. 858 (1985). *Sakhanskiy* suggests that a dual business and residential property can meet the nexus requirement. *Russell* held that an apartment building used for residential leasing moved in interstate commerce. Neither decision, by analogy to the facts here, appears to support Mr. Jah's argument.

Mr. Jah additionally cites to *United States v. Morrison*, 529 U.S. 598 (2000) and *United States v. Lopez*, 514 U.S. 549 (1995). These cases establish some of the limits of the commerce clause. Both declined to find a nexus to interstate commerce where statutes did not facially affect commerce. A law practice, in contrast, plainly deals in commerce.

At the hearing on December 22, Mr. Jah was invited to share any cases from our court of appeals in which a judge examined, at a pretrial motion, the interstate commerce nexus of the arson statute, found it lacking, and dismissed the case. After the hearing, Mr. Jah sent *United States v. Rayborn*, 312 F.3d 229 (6th Cir. 2002). While, in *Rayborn*, a district court dismissed a Section 844(i) prosecution because the building lacked a connection to interstate commerce, the Sixth Circuit reversed. The decision held that the district court had erred in its belief that it must consider the motion to dismiss because the nexus issue implicated the court's "subject matter jurisdiction" (it does not). It implicitly held that the district judge could hear a factual challenge to the nexus requirement, however, the decision reached a different conclusion on the merits. It held that the church, the victim in the arson, broadcast services via radio to other states and thus had a nexus to interstate commerce. The Sixth Circuit's implication that the court may hear a motion to dismiss on this point does not control here. And, were this order to decide the question of the interstate commerce nexus (it does not), neither *Lopez*, *Morrison*, nor *Rayborn* would aid Mr. Jah's cause.

In his moving papers, Mr. Jah raises other cases, non-binding in our circuit, which similarly address the sufficiency of a nexus to interstate commerce, but which do not affect the outcome of his motion.

The motion to dismiss Count One of the second superseding indictment is **DENIED**.

Mr. Jah also argues that his exhibits demonstrate malicious prosecution, selective prosecution, vindictiveness of agent, and false imprisonment. He does not explain how. Relief on these bare assertions is **DENIED**.

2. **FOURTH AMENDMENT CHALLENGES.**

His Fourth Amendment challenges rest on two theories: *first*, that the property targeted in the alleged arson, to repeat somewhat, did not move in interstate or foreign commerce and, *second*, that officers did not serve the warrant when they searched the Concord residence. For the foregoing reasons, the motions are **DENIED**.

As to the first point, the state warrant had no need to address a nexus to interstate commerce. In any event, the state warrant was based on a litany of crimes. There was ample probable cause.

As to the second point, Mr. Jah argues that law enforcement intentionally and deliberately disregarded Federal Rule of Criminal Procedure 41(f)(1), the warrant-service requirement, and that this violation compels suppression.

Rule 41(f)(1) provides:

> (C) Receipt. The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

It is doubtful that a violation of Rule 41(f) would also violate the Fourth Amendment. *See United States v. Hector*, 474 F.3d 1150 (9th Cir. 2007). Even if it did, a Fourth Amendment violation does not permit suppression unless the fruits of the search flowed, unattenuated, from that violation. *See Hudson v. Michigan*, 547 U.S. 586 (2006). So if failure to comply with Rule 41(f) somehow violates the Fourth Amendment, *Hudson* prohibits suppression unless the fruits of the search flow, unattenuated, from the violation.

To repeat, Hudson fashioned a "requirement of unattenuated causation." *Id.* at 594. That is, only violations that caused the discovery of the seized items entitle the defendant to the exclusionary remedy. Applying *Hudson*, our court of appeals denied suppression in *Hector*. In that case, Hector did not see or receive a warrant (until discovery). This, Hector argued, violated the Fourth Amendment and required suppression. The appellate decision reasoned that seizure of a gun, ammunition, and cash did not flow from the failure to produce the warrant: "acquisition of the evidence can hardly be characterized as a 'fruit of the fact' that the officers failed to present the warrant. . . ." *Id.* at 1155. Although Rule 41 did not govern the search in *Hector* (as no federal law enforcement participated), this does not matter. The decision addressed the basic question, whether even a putative Fourth Amendment violation from failure to produce a warrant would require suppression. It would not. *Id.* at 1154.

Nor here.

In our case, a San Francisco Superior Court issued the search warrant, which federal ATF agents and San Francisco police department officers executed. Mr. Jah and his adult son and daughter witnessed the search, during which police seized a firearm, ammunition, and electronic devices. Mr. Jah protests that officers failed to produce the warrant during or after the search, despite his and his daughters' requests (Dkt No. 203). *This alleged failure did not cause discovery or seizure of the gun or electronics.* Whether the warrant was provided or not provided, the search itself (pursuant to the warrant) would have unfolded in exactly the same way.

Mr. Jah cites to *United States v. Vasser*, 648 F.2d 507 (9th Cir. 1980) (Rule 41 violation may engender suppression if violation was "fundamental" under the Fourth Amendment). Neither *Vasser*, nor its progeny, however, hold up after *Hudson* and *Hector*.

Mr. Jah argues, in passing, that officers executed the warrant at night (Dkt. 203). Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) requires that a warrant be executed during the day unless the magistrate for good cause authorizes otherwise. Since Mr. Jah does not contend that the warrant lacked a good cause finding for night-time execution, this order does not address the timing of the search.

Mr. Jah also raises new points in his reply briefs. He argues that both warrants lacked particularity and probable cause, the search exceeded the scope of the warrant, the search of the computers was unreasonably delayed, the officers violated Federal Rule of Criminal Procedure 41(f)(1)(B) (requiring inventory be done in the owner's presence), and the probable cause affidavit did not support good cause for a nighttime search, and asks for suppression of the fruits of the searches. Procedurally, when a party files an initial motion, a response from the opposing side follows, and finally the movant may have the final word in his reply. The reply (and oral argument) is restricted to the issue(s) in the initial motion. Expanding the scope of the motion deprives the opposing side of meaningful chances to prepare and argue in response. If Mr. Jah wishes to bring a fresh motion on new grounds, he may do so. The motion to suppress on these grounds are **DENIED** without prejudice (Dkt. 249).

8

Mr. Jah's points are legally insufficient and do not warrant an evidentiary hearing.

The motions to suppress are **DENIED**.

3. **MOTION TO COMPEL.**

At the hearing, Mr. Jah withdrew the motion to compel. The motion is **DENIED** as moot.

**CONCLUSION**

For the above-stated reasons, Mr. Jah's motions to dismiss, compel, and suppress (at Dkt. No.s 187, 188, 202, and 203) are **DENIED**.

**IT IS SO ORDERED.**

Dated: December 26, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE