UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 19-00026 WHA |
| v. | |
| DAVID JAH, | **ORDER RE MOTIONS TO SUPPRESS AND FOR MISCELLANEOUS RELIEF** |
| Defendant. | |

## INTRODUCTION

The accused moves, *pro se,* for dismissal and suppression on various grounds. We have trod much of this landscape already. For the following reasons, the motions are **DENIED**.

## STATEMENT

Prior orders herein covered the facts of this action in detail (Dkt. Nos. 276, 305). Defendant David Jah, having rejected his last two lawyers, brings these five motions now representing himself. The charges against Mr. Jah, conspiracy to commit arson and felon in possession of a firearm, were severed (at his request). After the date of the last order on Mr. Jah's *pro se* pretrial motions, January 27, 2021, two days passed before the government filed their first two motions *in limine*. Five more days passed before Mr. Jah filed the first of the five instant motions (Dkt. No. 210). The trial on his possession charge will commence February 22, 2021. The trial date on the other charge has not yet been set.

# ANALYSIS

## 1. SPEEDY TRIAL ACT SECTION 3164.

Mr. Jah moves for "automatic review" of his custody status under 18 U.S.C. § 3164 (Dkt. No. 312). It states:

> (a) The trial or other disposition of cases involving--
> (1) a detained person who is being held in detention solely because he is awaiting trial[] . . .
>
> (b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.
>
> (c) Failure to commence trial of a detainee as specified in subsection (b), through no fault of the accused or his counsel . . . shall result in the automatic review by the court of the conditions of release. No detainee, as defined in subsection (a), shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial.

18 U.S.C.A. § 3164. Time properly excluded from the 70-day clock under Section 3161(h) applies with equal force to the 90-day clock under Section 3164(h) (*see* (b), above). Additionally, time excluded through "fault" of defendant or his counsel do not run against the defendant's 90 days. Mr. Jah relies upon *United States v. Tirasso*, 532 F. 2d 1298 (9th Cir. 1976), which interpreted Section 3164 prior to that section's amendment incorporating the exclusions in Section 3161(h). The reliance on *Tirasso* thus misfires. A prior order herein excluded the vast majority of Mr. Jah's pretrial time due to stipulation by Mr. Jah's counsel for effective preparation, for Mr. Jah's competency proceeding, and for Mr. Jah's pretrial motions (Dkt. No. 305).

Mr. Jah's instant motion substantially rehashes his motion to dismiss and suppress for violations of the Speedy Trial Act (Dkt. No. 251). This order need note only two points: (1) Mr. Jah statement, "contrary to court's order there was no stipulation for May 12 to June 30, 2020" (Dkt. No 312 at 3), and (2) Mr. Jah's request to reconsider the exclusion of time for a

competency hearing. As to (1), Mr. Jah's statement misrepresents the prior order at Dkt. No. 305 (emphasis added), which stated

> Parties . . . excluded time from March 31 to May 12, 2020, for effective preparation. After that, Mr. Jah moved for a video appearance (April 13, 2020), Attorney Leonida declared a conflict (June 18) and Mr. Jah filed a *Faretta* motion (June 19). *The competency determination, however, was still underway.* The determination of competency and order on the *Faretta* motion came June 30, 2020.

Thus, the time leading up to June 30 (including May 12 to June 30), was excluded automatically based upon the pendency of Mr. Jah's competency status, and his pretrial motion; the period between March 31 and May 12 was excluded due to stipulation. As to (2), the Court has received Mr. Jah's request that it carefully consider *Bloate v. United States*, 559 U.S. 196, 205 (2010), and it has complied. That decision discussed, *in dicta*, Section 3161(h). Section 3161(h) provides for automatic exclusion of time for competency and other proceedings involving the defendant. The *Bloate* decision supports a conclusion opposite Mr. Jah's. The decision emphasized Section 3161(h)'s wide applicability. It contrasted Section 3161(h) with Section 3161(d), the provision for exclusion of time for pending pretrial motions. The *Bloate* decision noted that Section 3161(h) contained no language limiting its applicable timeframe, whereas Section 3161(d) specified that the clock stops "from the filing" date of pretrial motions. *Id*. at 206. The decision held that time for *preparing* pretrial motions would not be automatically excluded under Section 3161(d). Nothing in the decision displaces our finding that time for Mr. Jah's competency hearing was properly excluded as a matter of law (*see* Dkt. No. 305).

This order will not relitigate the remaining issues. Eighteen days had run as of the last order on Mr. Jah's most recent pretrial motion (Dkt. No. 305). Even if every day since that time had run against Mr. Jah's Speedy Trial Clock, it would be just 22 days. The sum of 18 and 22 is 40, which is less than 70 (let alone 90). The motion to dismiss or for release for a violation of the Speedy Trial Act is **DENIED**.

2. **PRESENTMENT AND PRE-INDICTMENT DELAY.**

The five motions addressed herein substantially rehash Mr. Jah's prior motions to dismiss and suppress for violations of his various speedy trial rights (Dkt. No. 251). The Speedy Trial Act, presentment delay, and preindictment delay claims received ample treatment at Dkt. No. 305. He raises no new issues now. Relief on that ground is **DENIED AS MOOT**.

3. **NEXUS TO INTERSTATE COMMERCE.**

Mr. Jah reiterates that federal jurisdiction fails because Attorney Towey's home law office did not touch interstate commerce. Mr. Jah's argument received extensive treatment already and he raises no new points (Dkt. No. 276). Relief on that ground is **DENIED AS MOOT**.

4. **MOTIONS TO SUPPRESS.**

In four of his new motions, at Dkt. Nos. 315, 326, 357, and 363, Mr. Jah renews his Fourth Amendment challenges. He disputes the validity of the November 2018 search of the residence on Detroit Avenue in Concord with following arguments:

1. Officers never presented him with a copy of the warrant.

2. The warrant lacked particularity.

3. The warrant was overbroad.

4. The application for the warrant omitted important information.

5. The warrant lacked probable cause to support it due to "stale" information.

6. The search exceeded the scope of the warrant.

7. The search warrant affidavit lacked good cause for a nighttime search.

Mr. Jah argues that each of the above justifies suppression. For the below reasons, he errs.

*First*, a prior order herein, at Dkt. No. 276, ruled on the issue of failing to present the warrant. Relief on that ground is **DENIED AS MOOT**.

*Second* and *third*, Mr. Jah objects to a lack of particularity in the warrant. Specifically, Mr. Jah objects that the warrant did not specify the types, makes, models, and/or calibers of electronic devices or weapons sought (Dkt. No. 315 at 9). Mr. Jah also argues that the warrant was facially overbroad. This argument also fails. In determining whether a warrant is

overbroad and insufficiently particular, one or more of the following questions may be considered: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986).

Our state warrant itself named, in relevant part, "Ammunition," "Firearms," "Receipts for firearms, ammunition and/or firearm ranges," "Cellular phones, laptops, IPads, other similar computers, cameras, [and] media storage devices . . . ." The warrant itself satisfied particularity requirements. Moreover, it expressly "incorporated" the probable cause affidavit by Sgt. Anthony Damato of the San Francisco Police Department (Dkt. No. 326-1 at US-0003224; Dkt. No. 315 at 4).

Here, the probable cause affidavit gave additional detail that it sought indicia "establish[ing] who had access and control of the apartment, ammunition, firearms, receipts for firearms, or firearm ranges" (firearms having been recovered and "used" in the case), and "any cellular phones, laptops, IPad, other computers . . . due to the fact that these items hold communications and photographs that can offer evidentiary value to the investigation of the attempted murder and arson" (Dkt. No. 326, Exh. A). Sgt. Damato's affidavit specified that officers had seen Mr. Jah at the Detroit Avenue apartment. From this, among other things, Judge Yaggy reasonably concluded that there was a fair probability that evidence of the alleged attempted murder/arson could be found at the Detroit Avenue residence.

The warrant offered sufficient guidance for the executing officers to determine which items were subject to seizure and which items were not. *See Spilotro,* 800 F.2d at 963. The warrant was not a "general" warrant. It instructed officers to seize specifically enumerated items that were direct evidence of the "attempted murder and arson." Warrants may authorize a search for classes of generic items where the government is not "able to describe the items more particularly in light of the information available to it at the time the warrant was

5

issued." *Ibid.* Mr. Jah objects that the nature of the items to be seized were amenable to more particular description. He also calls the categories of items named in the warrant "generic." Here, the nature of the evidence sought was not amenable to more particular description as officers did not know the extent to which Mr. Jah used or possessed weapons or "burner" cell phones in excess of the ones for which they had previously obtained search warrants.

As for overbreadth, Mr. Jah objects that his daughter and son kept their belongings (including electronics and firearms) in the apartment, making the warrant overly broad. Mr. Jah cites *United States v. Adjani*, 452 F.3d 1140, 1146 (9th Cir. 2006), to shore up his argument, but in that decision, our court of appeals observed: "[W]e have never held that agents may establish probable cause to search only those items owned or possessed by the criminal suspect." Moreover, a warrant does not violate breadth requirements when it seeks "[a]ny firearm" and various other firearm-related items in the context of an alleged 922(g) violation. *United States v. King*, No. 20-10007, 2021 WL 127828 (9th Cir. Jan. 14, 2021) (warrant lawfully broad when seeking "any firearm," notwithstanding officers knew the make/model of a firearm believed to be in defendant's possession).

In any event, the warrant was not so facially overbroad or insufficiently particular that the *Leon* good-faith exception does not apply. *See United States v. Leon,* 468 U.S. 897, 923 (1984). The warrant did expressly incorporate the affidavit of probable cause. Officers' reliance on Judge Carol Yaggy's probable cause determination and on the technical sufficiency of the warrant was objectively reasonable. *See United States v. Leon,* 468 U.S. at 923. Our facts differ from those of a case on which Mr. Jah relies, in which the "things not described" in the application for a warrant "would enable seizure of items 'wholly unrelated' to the finances of the business," the topic of criminal investigation. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). Since weapons and electronics are entirely related to the topic of the investigation, the exclusionary rule does not apply to the items seized pursuant to the warrant. Suppression on these grounds is **DENIED**.

*Fourth*, Mr. Jah alleges the affidavit omitted important information and that those pieces of material information "were intentionally or recklessness disregarded," presumably by

6

officers, "thus grounds for a *Franks* hearing" (Dkt. No. 315 at 3). Mr. Jah now argues that the application for the warrant lacked information about Mr. Jah Jr.'s ownership of the AK47 seized from the Detroit Avenue apartment and lacked information about the make/model/type of the electronics and firearms to be seized (Dkt. 326 at Exh. F). A prior order herein covered this legal terrain (of omissions from the probable cause affidavit) thoroughly with respect to an alleged omission about Mr. Jah residing elsewhere (Dkt. No. 98).

To suppress evidence seized pursuant to a search warrant under *Franks v. Delaware,* 438 U.S. 154, 155–56 (1978), a defendant has the burden to show that the affiant of a search warrant knowingly, intentionally, or recklessly made a false statement or omission. The false information or omission must also be material and necessary to the finding of probable cause. *United States v. Kiser,* 716 F.2d 1268, 1271 (9th Cir. 1983). As to the first point, evidence that Mr. Jah's son owned a gun would not tend to contradict the evidence before the magistrate that Mr. Jah, himself, possessed one. As to the second, the evidence about serial numbers and make, model, and/or caliber of weapons does not rise to the level of a material omission because evidence against Mr. Jah justified the search for other weapons and electronics as well.

*Fifth*, Mr. Jah argues that evidence supporting probable cause to search for a firearm had gone stale. This case differs from *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012), which had found stale evidence did not support probable cause. While the handgun sought for a murder committed nine months prior (in *Grant*) could not support probable cause, Mr. Jah was accused of attacking a house with a Molotov cocktail a mere four days prior to this search. Evidence tying him to weapons appeared fresh. The warrant, to repeat, sought both firearms and explosive materials. Judge Yaggy had ample probable cause to issue our warrant. Relief on this ground is also **DENIED**.

*Sixth*, Mr. Jah argues briefly that the search exceeded the scope of the warrant and included "exploratory rummaging" (Dkt. No. 315 at 5). He offers no additional evidence or argument on this point. Nothing else in the record suggests the search exceeded the warrant's scope. This order cannot grant relief on this conclusory basis; the request to do so is **DENIED**.

1   *Seventh*, Mr. Jah raises the issue of the nighttime search.  True, the Federal Rules of Criminal Procedure require "good cause" for a nighttime search.  *See* FRCrP 41(e)(2)(ii).  Assuming, *arguendo*, that the search of the Detroit Avenue apartment constituted a federal search, good cause for the time of night existed.  The probable cause declaration stated that because the search was seeking, in part, electronics, it "requeste[ed] . . . serviceable during nighttime hours in order to prevent any unneeded police confrontation with the suspect's associates and to secure potentially fleeting evidence" (Dkt. No. 326, Exh. A).  And, the face of the warrant indicates "Nighttime Search Authorized YES X NO __."  Mr. Jah argues that no showing of exigent circumstances justified a nighttime search; he points to the lack of exigency indicated by the small apartment with two means of egress and over ten "SWAT" officers executing the search.  Nonetheless, the risk of "wiping evidence" and the wish to avoid confrontation validly support Judge Yaggy's decision.  *See, e.g., United States v. Stefanson*, 648 F.2d 1231, 1236 (9th Cir. 1981) (holding that where a wife had the chance to destroy evidence after being alerted to her husband's arrest, exigency justified a warranted search at night).  Judge Yaggy did not err in finding good cause for the nighttime search.

The government urges that this order can deny relief to Mr. Jah solely because the government got a later, federal, warrant to search the electronic devices.  Not so.  The legality of the earlier search would render those electronics "fruits" of the search.

Mr. Jah raises two additional miscellaneous challenges:  Mr. Jah appears to contest the magistrate's objectivity.  He states,

> The affiant appearing before the same magistrate four days in a row with same [*sic*] affidavit, the week long and all day surveillance applying for the warrant at 9:25pm [*sic*] are questionable factors to challenge the magistrates dettached [*sic*] interests or consideration of probable cause

(Dkt. No. 363 at 4).  Without clearer reasons for challenging Judge Yaggy's objectivity, Mr. Jah's protest lacks detail on which this order can evaluate it.  Nothing about appearing before the magistrate several times, or with an offering about surveillance, calls her evaluation of probable cause into question.

8

Finally, Mr. Jah also apparently asked officers why they destroyed the Detroit Avenue front door. He complains that Sgt. Damato answered, "Because of what you did to these people." This statement does not trigger any Fourth Amendment rights violation and thus does not form an actionable basis for suppression.

The totality of the circumstances here indicates that Judge Yaggy had a substantial basis for concluding that probable cause existed. Defendant's motions to suppress are accordingly **DENIED**.

5. **MOTION FOR RETURN OF PROPERTY.**

Mr. Jah also moves for a return of property. To the extent that his motion rides the coattails of his Fourth Amendment challenges, relief cannot be granted on that basis alone. As the defendant during an ongoing investigation, he has the burden to show that he is entitled to the items he seeks. *See United States v. Gladding*, 2014 WL 7399113 (9th Cir. 2014). Mr. Jah requests, among other items: an HP laptop, Acer computer, two apple laptops, two pink Apple cell phones, a Samsung phone, sim cards, a Go Pro camera, rifle magazines, cartridges, flash suppressor, rifle, buttstock, carrier spring, bolt carrier, $100,000 in unopened sealed currency (Dkt. No. 357 at 6). Mr. Jah offers his own declaration, and the declaration of his daughter Isis Jah (who was the sole leaseholder at the Detroit Avenue apartment). She declares "My firearm, magazines, ammunition, cell phone and computer are my personal property" (Dkt. No. 357-3, Isis Jah Decl. ¶10). Exhibit F to the motion includes a Dealer's Record of Sale of Firearm attesting that the Glock pistol was registered to Ms. Jah (Dkt. No. 357-5). The government has not suggested that it intends to attribute possession of this weapon to Mr. Jah. It is ordered **RETURNED**.

Unfortunately, since Ms. Jah does not give additional details about the other electronics and other items which she avers belonged to her, it is impossible for this order to parse her remaining items from ones relevant to pending charges. The motion with respect to other items is **DENIED**.

The government should, however, examine the items in its possession to see if there remains irrelevant property that does not form a basis of the prosecution. If so, it is requested to return those items.

**6.     EIGHTH AMENDMENT.**

Mr. Jah argues he is suffering an Eighth Amendment violation for "mental anguish due to presumed innocence" the "defendant is being subjected to" and that he is in quarantine (Dkt. No. 312 at 6–7). This does not state a cognizable claim. It reiterates the legal presumption of his innocence and the tragic reality about harshness of incarceration during a pandemic. Pretrial incarceration taken with these concerns, however, does not constitute an Eighth Amendment claim. Relief on this ground is **DENIED**.

## CONCLUSION

For the foregoing reasons, the motion to suppress for violations of the Fourth Amendment are **DENIED** or **DENIED AS MOOT**. The motions to suppress and dismiss for violations of the right to speedy are **DENIED AS MOOT**. The remainder of Mr. Jah's claims for dispositive relief are **DENIED**. The motion for return of property is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: February 18, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE