UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>DAVID JAH,<br><br>    Defendant. | No. CR 19-00026 WHA<br><br>**MEMORANDUM OPINION RE LOST OR DESTROYED EVIDENCE** |

Defendant David Jah moved, *pro se*, to dismiss the second superseding indictment. He argued that the government lost evidence, violating his due process rights. A recent oral ruling on the record **DENIED** the motion, but also found that the loss warranted a jury instruction. This memorandum opinion follows full briefing, an evidentiary hearing, trial evidence on the loss, and argument.

The relevant facts follow. On April 26, seven days before Mr. Jah's trial for conspiracy to commit arson began, the government announced that it had recently learned "that a [Motorola] cellphone was seized from Dennis Williams following his arrest in December 2018 but never copied or produced" and now would not power on. Williams was Mr. Jah's co-defendant, who was accused of carrying out arsons for Mr. Jah. After Williams' 2018 arrest, law enforcement released him, but the Motorola remained in storage. At some point, due to the passage of time, it became inoperable. A superseding indictment eventually charged Williams in October 2020 as Mr. Jah's co-defendant and law enforcement rearrested Williams.

He swiftly pled guilty to arson and conspiracy to commit arson and has testified for the government at trial. Since re-discovering the phone, the government has attempted to recover the contents of the phone, as has FBI forensics, all without luck. The government represents, and Mr. Jah does not contest, that it never used the contents of the Motorola in developing its case. Mr. Jah filed the instant motion on May 2, one day before the start of trial (Dkt. Nos. 520, 527, 547, 548).

Mr. Jah advances two arguments for dismissal: *first*, he argues that the government destroyed the Motorola in bad faith, which constitutes a due process violation because the phone amounted to at least "potentially useful evidence." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The record does not support bad faith, however. On May 3, the first day of trial (but before the jury was selected), Special Agent Andrea Buenaventura of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), testified that during his 2018 arrest, Williams denied involvement in the arsons and "readily" provided his phone to the ATF. At that time, she briefly searched the phone and didn't "initially find anything related to the investigation" of the Molotov cocktail attacks. She believed then that the Motorola was a "burner," *i.e.* not one Williams had used to communicate with Mr. Jah. She stowed it in ATF storage. Mr. Jah argues bad faith because the government admitted in its opposition that it "advertently failed to copy the phone." The government brief actually said "*in*advertently." Mr. Jah also posits that the phone must have contained exculpatory information, or the ATF would have returned the phone to Williams. Storing suspects' property during investigations, however, occurs routinely (Tr. Vol. 1 at 3–7; Reply at 2; Opp. at 2).

*Second*, Mr. Jah asks for dismissal under *California v. Trombetta*, 467 U.S. 479, 489 (1984), because the government negligently lost the Motorola, which "possess[ed] an exculpatory value that was apparent before the evidence was destroyed" and that defendant cannot obtain an adequate substitute. *Id.* at 489. The government does not contend that substitute evidence exists, so the dispute turns on the phone's apparent exculpatory value.

Our court of appeals has dismissed an indictment, citing *Trombetta*, when Homeland Security agents failed to preserve video evidence that would have shown a defendant trying to

2

attract officers' attention during a border crossing, supporting her duress defense to drug smuggling. *United States v. Zaragoza-Moreira*, 780 F.3d 971, 979 (9th Cir. 2015). In contrast, in *United States v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013), our court of appeals rejected a *Trombetta* motion when a defendant argued that others had hidden drugs in his Jeep, making him an unwitting mule. The defendant had averred that the Jeep's destruction prevented his expert from opining about the ease of installing the drugs, but our court of appeals deemed the Jeep's exculpatory potential non-apparent. *See id*. at 1171.

The Motorola's apparent exculpatory value appears weaker than that of Sivilla's Jeep. The Motorola did not appear in any texts or phone calls in evidence at trial. In fact, FBI Special Agent Keigan Park testified that he had retrieved all text exchanges between Mr. Jah and Williams from Mr. Jah's phone. Williams testified that he owned *seven* phones at the time of the conspiracy and shared some with family members. The number of phones and pattern of sharing them suggests (albeit weakly) that the Motorola was less likely to have relevant information than it would if Williams used just one phone for all communications (Tr. Vol. 3 at 904; 551–54; 610–12; Trial Exhs. 20, 21; Tr. Vol. 4 at 733).

Substantial inculpatory evidence emerged at trial, undercutting the potentially exculpatory value of the Motorola. Mr. Jah sent a hit list of addresses to his alleged co-conspirators, which they understood to be targets. Mr. Jah had motive (ill will towards participants in a probate dispute involving his mother's home and, separately, a civil lawsuit). Williams and a third alleged co-defendant, Kristopher Alexis-Clark, testified that they threw Molotov cocktails at three of the targets on the list, all as Mr. Jah requested (Tr. Vol. 3 at 577, 659–70).

Mr. Jah counters: *first,* Williams conspired solely with Alexis-Clark. Ample evidence counters this theory, including testimony that neither Williams nor Alexis-Clark knew any of the people at the addresses on the list. *Second*, Mr. Jah argues that Williams communicated using the phone after Alexis-Clark's and Mr. Jah's arrests (in October 2018), and prior to Williams' arrest (in December 2018). It is not clear how this would exculpate Mr. Jah. *Third,* he argues that Williams could have deleted information from the cell phone after the others'

3

arrests. Mr. Jah does not explain how this would have helped him. *Fourth*, he argues that Williams used the Motorola to record an important conversation at a casino. Preliminarily, it is unclear how the recording would have helped to exculpate Mr. Jah. But Mr. Jah testified that he saw Williams accessing a "recording app" at the casino, suggesting that Williams made a recording on *one* of Williams' phones. Mr. Jah also offers that Alexis-Clark recorded the conversation. Agent Park in fact testified that Alexis-Clark told him about recording the conversation. While no recording of the casino conversation came in at trial, a recording by Alexis-Clark could have substituted for a recording on Williams' Motorola. Thus, even if the hypothetical recording could have helped the defense, the record shows that substitute evidence may have existed. *Fifth*, Mr. Jah claims that Williams continued to commit crimes from jail. Beyond a collateral credibility attack, this does not support Mr. Jah's theory that the phone's contents would exculpate him (Tr. Vol. 7 at 1349; Reply at 5).

Mr. Jah argues, correctly, that the presumption of innocence applies to analyzing the prejudicial effects of lost evidence. *See, e.g., Tucker v. Wolff,* 581 F.2d 235, 237 (9th Cir. 1978). But Mr. Jah has not "put forth . . . non-speculative evidence" such that this order should "presume" the evidence would (or could) exculpate him. *United States v. Vasquez*, No. CR 2:11-101 WBS, 2014 WL 2548638, at 3–4 (E.D. Cal. June 5, 2014) (Judge William B. Shubb). Mr. Jah's above arguments do not show the Motorola was plainly exculpatory.[1]

\* \* \*

The government should not, however, have neglected the Motorola. A two-step test (each with multiple factors to balance) governs the decision to offer a corrective instruction for lost or spoiled evidence. Following *United States v. Sivilla*, 714 F.3d 1173 (9th Cir. 2013),

---

[1] Additionally, Mr. Jah alleges destruction of evidence and/or failure to preserve evidence from the failure to test the wick, glass fragments, and hair samples from the Molotov cocktail found at 126 Rassani Drive on November 3, 2018. He claims that the hair samples were tested but that reports were not provided to him. He asks for suppression of the glass and wick because of allegedly withheld evidence. During a hearing, however, the government asserted that it did turn over all reports and Mr. Jah did not refute that representation (Tr. Vol. 3 at 499–500). The motions to suppress and to dismiss on these grounds also lack merit.

4

quoting *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979), the Court will give a corrective instruction on the loss of evidence.

For these reasons, the Court denied the motion on the record.

Dated: May 13, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE