1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11
12
13    UNITED STATES OF AMERICA,

14              Plaintiff,                    No.  CR 19-00026 WHA

15         v.

16    DAVID JAH,                              **ORDER DENYING MOTION FOR
                                              REDUCTION OF SENTENCE**
17              Defendant.
                _____

18
19         Defendant David Jah masterminded a series of firebombings (and one shooting) intended

20    to exact revenge against victims on his (literal) list of enemies.

21         In 2021, a jury found defendant guilty of conspiracy to commit arson.  At the time of

22    sentencing, defendant's guideline range stood at 135 – 168 months (Dkt. No. 623 at 38).  The

23    undersigned sentenced defendant to a 216-month term of imprisonment, a substantial upward

24    departure from that guideline (Dkt. No. 647).

25         On April 10, 2024, defendant, represented by counsel, filed a motion to reduce his

26    sentence under Amendment 821 to the Sentencing Guidelines, made retroactive by the

27    Sentencing Commission.  *See* U.S.S.G§1B1.10(d).  That amendment had the effect of reducing

28    defendant's criminal history category from IV to III, and his guideline range to 121 – 151

United States District Court
Northern District of California

months (Dkt. No. 807). Defendant has moved to reduce his sentence to 175 months. The government opposes any reduction. Six victim statements have been received and considered.

Probation has recommended a sentence of 199 months (Dkt. No. 807 at 4). It reached that recommendation by measuring the difference between the original guideline recommendation (135 – 168 months) and the sentence imposed (216 months), a 48-month upward departure, and applying that same departure to the *new* guideline (121 – 151 months). Here, a 48-month upward departure from the new guideline's top end comes out to 199 months.

The judge's resentencing decision, meanwhile, is governed by the Section 3553(a) factors that guided its initial imposition. The sentencing judge must also consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10 comment n.1(B)(ii).

In 2021, the Section 3553 factors necessitated a significant upward departure from the guideline range, which the undersigned determined did not adequately reflect the seriousness and scope of defendant's conduct, and the danger he posed to the public. Defendant's actions evidenced a callous disregard for human life not present in the typical arson offense. He orchestrated a potentially deadly terror campaign over the course of several years, all of it driven by perceived injustices related to his inheritance. As stated during sentencing:

> Revenge was the motive. A very common thread throughout this terrible story, Mr. Jah committing revenge. In my 22 years on the Court I have not seen a case that posed such a danger to the public as Mr. Jah. And I say that recognizing that Mr. Jah has redeeming qualities, including his intelligence, his ability to make a speech, his business acumen. But he has a monumental flaw of intense self-centeredness such that if anyone crosses him, he doesn't forget, and he seeks revenge and doesn't let it go. I've never seen such a case. And every one of the people who were on that hit list were in danger then and were in danger as long as he was out of custody and, I hate to say it, will be in danger when he is released . . . . [I]t's chillingly frightening . . . this strong innate need to seek revenge.

(Dkt. No. 701 at 94, 96).

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant, for his part, argued that the Criminal Justice Panel "railroad[ed]" him, that he was "subjected to" "tricks of the trades and gimmicks," that his appointed paralegal "sabotage[d]" his defense, and that the undersigned appointed that paralegal for that very purpose (*id*. at 24-25). The government's attorneys were deemed liars, the jury of his "so-called peers" racists (*id*. at 81-86). The Court, too, was liable: "As transgenders alter their identity, the members of this court altered the burden of proof by statutory construction" (*id*. at 84). Seven victims spoke during sentencing. Defendant accused several of those witnesses of "taunt[ing]" him during sentencing, others of "manipulat[ing] court documents" and robbing him of his inheritance, another of attempting to feed his dogs chocolate, and yet another of trying to "take advantage of" his son (*id*. at 76, 78, 79, 91). Defendant characterized the harm to one victim as "damage to the front steps of your house," and expressed shock at the sympathy garnered by an event so inconsequential in comparison to his *own* suffering (*id.* at 87). At the close of his allocution, he stated his strong belief that his conviction would be summarily overturned and, speaking in the third person, reassured the victims in the courtroom that when "Mr. Jah comes back, I don't want you guys to be afraid. Like I said . . . I must not allow watching *The Equalizer* [a film wherein a vigilante executes wrongdoers] to get the best of me" (*id*. at 89). The remainder of his allocution was spent re-litigating the ownership and inheritance of his mother's home, the property at the center of his vengeful fixation.

There were apologies, but not to the victims of his deadly conspiracy. Defendant apologized instead "for believing that the United States Constitution was the supreme law of the land," for "not realizing that [my lawyer] can take away my enjoyment of a speedy trial right," for "thinking that federal rules . . . included me," and so on (*id*. at 81-82).

The sentence imposed weighed all of the above, in addition to defendant's criminal history and other relevant facts, and determined that 216 months constituted the minimum sentence necessary to provide just punishment for the offense, to afford adequate deterrence, to provide defendant with needed medical care and correctional treatment, and, most importantly, to protect the public from further harm.

United States District Court
Northern District of California

1    Now, too, a sentence of 216 months is the minimum sentence necessary to effectuate the

2    sentencing goals set out by Congress.  *First*, the sentencing guideline range, amended or not,

3    does not adequately capture the seriousness and scope of the conduct at issue here.

4    Defendant's conspiracy targeted the homes of those he saw as his enemies, and in so doing put

5    them and their spouses and children at great risk.  *Second*, there is nothing to indicate that

6    defendant has, since his sentencing, expressed remorse or contrition, or at any point taken

7    responsibility for his actions.  Even now, defendant believes *himself* to be the true victim in all

8    of this, the target of a grand conspiracy encompassing assorted adversaries from decades past,

9    including the victims of his crimes, the United States government, the state court, the federal

10   court (including the undersigned), the jury that convicted him, appointed counsel (*all* of them),

11   retained counsel, his appointed paralegal, and countless others.  It is everyone *else* that, in

12   defendant's words, "[can]not accept what was right" (*id*. at 84).  David Jah stands apart from

13   the typical criminal defendant.  He has shown himself to be a man who harbors the need for

14   revenge, often for decades, and who acts on that need in a deliberate and deadly manner.  A

15   reduction in defendant's sentence would pose a significant risk to his victims, whom he

16   perceives to be his enemies.  That danger necessarily extends to the community at large, as it

17   did when one of defendant's firebombs hit the wrong house.

18   Defendant, meanwhile, points to his post-sentencing conduct, namely his enrollment in

19   BOP courses and the absence of disciplinary violations during his time in custody (Dkt. No.

20   806-1).  Defendant's good behavior and diligence in pursuing educational courses made

21   available by our Bureau of Prisons are commended.  Nevertheless, his negative track record far

22   outweighs the positive, and his good behavior during this relatively brief period does not

23   outweigh the sentencing considerations outlined above.  "There is a longstanding tradition in

24   American law, dating back to the dawn of the Republic, that a judge at sentencing considers

25   the whole person before him or her as an individual."  *Concepcion v. United States*, 597 U.S.

26   481, 486 (2022) (internal quotation marks omitted).  Good behavior during incarceration is

27   *generally* a heartening sign.  Defendant's proclivity, however, is for violent, dangerous acts of

28   revenge against *specific* individuals that he believes have wronged him.  That he can exist

1   without incident in a general population does not lessen the danger he presents to the

2   individuals that are on, or may yet make their way onto, his list of "enemies."

3          Defendant also emphasizes that the BOP has given him a "classification of low

4   recidivism" (Dkt. No. 806-2).  This argument relies on a BOP document titled "Individualized

5   Needs Plan — Program Review," which includes the following table:

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 01-25-2023 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 08-26-2021 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 02-28-2024 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 02-28-2024 |
| N-COGNTV N | NEED - COGNITIONS NO | 02-28-2024 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 09-30-2021 |
| N-EDUC N | NEED - EDUCATION NO | 02-28-2024 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 02-28-2024 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 02-28-2024 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 02-28-2024 |
| N-MEDICL N | NEED - MEDICAL NO | 02-28-2024 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 02-28-2024 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 02-28-2024 |
| N-TRAUMA N | NEED - TRAUMA NO | 02-28-2024 |
| N-WORK Y | NEED - WORK YES | 02-28-2024 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 02-28-2024 |

18   (Dkt. No. 829-1 at 3).  The line at issue, which reads "low risk recidivism level," lacks context.

19   During oral argument defense counsel was invited to, and did, contact the BOP and file

20   supplemental briefing further explaining the BOP's recidivism determination.  Blake Danser,

21   Attorney Advisor for FCC Victorville (where defendant is housed), told counsel that the

22   reference to "low risk recidivism" is one part of the BOP's Needs Assessment System, which

23   works to "determine risk of recidivism upon release and [ ] identify areas to be targeted in an

24   effort to reduce future recidivism," as required by the First Step Act (Dkt. No. 850 at 2).  The

25   "risk of recidivism" metric is determined via the "Prisoner Assessment Tool Targeting

26   Estimated Risk and Needs (PATTERN)"  (*ibid.*).  "[T]his PATTERN tool assigns a point value

27   to an inmate based on many different factors" (*ibid.*).  Relevant here, those factors "are not

28   available to the public," and the "*PATTERN finding is not a personalized evaluation of an*

United States District Court
Northern District of California

1  *inmate*" (*ibid*) (emphasis added).  The PATTERN assessment, moreover, is "only relevant in

2  this case if Mr. Jah were able to receive First Step Act credits," which he is not (*ibid.*).  It fails

3  to persuade for those reasons.

4       Defendant's motion is **DENIED**.

5                          *            *            *

6       Separate from the above, an October 3 motion requested that the undersigned order the

7  BOP to recalculate defendant's criminal history score to facilitate his receipt of certain First

8  Step Act benefits (Dkt. No. 858).  The government shall please submit a response by

9  **NOVEMBER 22, 2024, AT NOON**, detailing its position on such an order in light of Amendment

10  821 and the BOP's broad discretion in this area.

11

12       **IT IS SO ORDERED.**

13

14  Dated:  November 8, 2024.

15

16

17  WILLIAM ALSUP
       UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

6