UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

             Plaintiff,

   v.

DAVID JAH,

             Defendant.

No.  CR 19-00026 WHA

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

## INTRODUCTION

Defendant, convicted of conspiracy to commit arson by a jury, moves *pro se* for compassionate release due to medical circumstances, family circumstances, and an unusually long sentence.  For the reasons stated below, the motion is **DENIED**.

## STATEMENT

Defendant David Jah masterminded a series of firebombings intended to exact revenge against victims on his literal list of enemies.  In 2021, a jury found defendant guilty of conspiracy to commit arson, and the undersigned sentenced defendant to a 216-month term of imprisonment.  Defendant is incarcerated at FCI Victorville.

Defendant now moves for compassionate release.  *First*, defendant argues that FCI Victorville is experiencing "undocumented infectious disease outbreaks" causing symptoms such as "a tingling feeling in the back of the throat," "stuffy nose accompanied by a very very

United States District Court
Northern District of California

sore throat, headache, and fever," "greenish/lime colored phlegm and a very terrible, strong cough which causes fatigue," that the facility is further experiencing "an outbreak of skin boils, scabies, rashes, and staph infections, and that there is a "tainted water source" (Dkt. No. 887 at 1). He asserts that he faces "greater risk of other complications" because he is a "sickle cell trait carrier" (*id*. at 2). *Second*, defendant argues that he suffers from bloody fecal discharge, and that that condition constitutes grounds for release in light of his family history of colon cancer, the BOP's failure to adequately diagnose and treat his condition, and other coterminous ailments ("loss of teeth," "blurry vision," and "head and body aches") (*id*. at 2–3). *Third*, defendant argues that he should be released because his "30 year unmarried daughter has had life altering experiences in [*sic*] which has led to severe depression and mental anguish rendering her incapable of self care because of her current mental condition and the petitioner is the only available caregiver to provide the round the clock care necessary" (*id*. at 3).

*          *          *

On May 2, 2025 — four months after his motion for compassionate release was filed — defendant filed a separate letter requesting:  (1) a stay of the compassionate release motion so that he can marshal evidence of the otherwise unsupported claims made therein, (2) subpoenas for and "orders to compel" the production of other inmates' medical records, and (3) the appointment of counsel (Dkt. No. 887). All requests are **DENIED**.

*First*, defendant requests that the Court "provid[e] defendant with subpoenas to overcome the requirement of the burden to show the truth" of his claims of disease outbreaks at FCI Victorville (*id.* at 2), or otherwise issue an order that "would compel sick call data of inmate[] complaints and how many tests have been conducted from 2023-25" and "[t]he results of blood draw[s] of unknown inmates which show an infectious disease outbreak is happening" (*id.* at 2).

Defendant does not identify a mechanism through which the Court may grant his requested subpoenas and orders to compel. The undersigned reads the letter to be a request to facilitate the issuance of Rule 17(c) subpoenas.

2

It is doubtful that Rule 17(c) subpoenas are available post-trial.  *See* Fed. R. Crim. P. 17(c) ("A subpoena may order the witness to produce any [documents] in court *before trial* or *before they are to be offered in evidence*" (emphasis added)); *United States v. Nixon*, 418 U.S. 683, 698, (1974) (explaining that Rule 17(c) is not intended to provide "a means of discovery for criminal cases . . . but *to expedite the trial* by providing a time and place *before trial* for the inspection of subpoenaed materials" (emphasis added)); *but see United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981) ("Although Rule 17 subpoenas are generally employed in advance of trial, we see no reason why their use should not be available for post-trial motions and sentencing.").

Even if Rule 17(c) is available post-trial, it is "not intended as a general 'fishing expedition,'" *Nixon*, 418 U.S. at 700, and a request may be quashed where "compliance would be unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2).  Defendant's request to produce *two years* of inmate medical records is a burdensome fishing expedition and is **DENIED**.

*Second*, defendant requests a stay so that he can have his medical records sent to our U.S. Attorney's Office, and otherwise seek out evidence in support of his daughter's medical condition and need for a caretaker.  Defendant bore the burden of marshalling evidence of his claims *at the time of his motion*.  He attests, moreover, that he "still continues to have his medical record emailed" to him and is otherwise "provided with a copy thereof," but does not explain why those records were not attached to his motion at the time it was filed (or submitted any time thereafter) (Dkt. No. 887 at 1).  The resolution of the present order has been much delayed by snail-paced briefing.  It will not be delayed further.  Defendant's request for a stay is **DENIED**.

*Third*, defendant requests the appointment of counsel on the grounds that his motion requires "communication that defendant lacks currently, no phone calls, emails or admin access . . . due to issues [throughout] the Victorville FCI" (*id*. at 2).  Defendant sends and receives mail and email:  The record contains examples of mail and email sent by him. Defendant concedes that he continues to receive copies of his own medical records.  Defendant has access to the internet and means of online research:  His own letter asks the undersigned to

take judicial notice of myriad reports, surveys, websites, and so on.  Defendant has access to information concerning his daughter:  His argument that he is needed to take care of her implies that he has been able to inquire into her present circumstances.  He does not otherwise explain why an attorney would be needed to facilitate the collection of records concerning her condition.  In sum, defendant has failed to establish a need for counsel.  The request for appointment of counsel is **DENIED**.

This order returns to the merits of the motion for compassionate release.

## ANALYSIS

Under Section 3582(c)(1)(A) of Title 18 and Section 1B1.13(a) of the Sentencing Guidelines, compassionate release is appropriate where:  (1) defendant has exhausted all administrative rights to appeal, (2) extraordinary and compelling reasons warrant a sentence reduction, (3) defendant is not a danger to the safety of any other person or to the community, and (4) a reduction is consistent with the sentencing factors set forth in Section 3553(a) of Title 18.

Defendant has exhausted all available administrative remedies (Dkt. No. 884).  He fails at every other step.  Any one failure, standing alone, is fatal to his motion.

### 1.   **EXTRAORDINARY AND COMPELLING REASONS WARRANTING A SENTENCE REDUCTION.**

Defendant sets forward several purported extraordinary and compelling reasons warranting a reduction.  Each is addressed in turn.

#### A.   *MEDICAL CIRCUMSTANCES.*

Medical circumstances constitute an extraordinary and compelling reason where: (1) defendant "is suffering from a terminal illness," (2) defendant is suffering from a serious condition or impairment that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover," (3) defendant "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death,"

United States District Court
Northern District of California

1    or (4) defendant's correctional facility is affected by "or at imminent risk of being affected by"

2    an "ongoing outbreak of infectious disease," he is "at increased risk of suffering severe

3    medical complications or death as a result of exposure," and "such risk cannot be adequately

4    mitigated in a timely manner."  U.S.S.G. 1B1.13(b)(1).

5    　　　　Defendant does not make out a medical circumstance warranting sentence reduction.

6    　　　　*First*, defendant does not establish that he suffers from the kind of medical condition that

7    constitutes an extraordinary and compelling reason.  As an initial matter, defendant provides

8    no medical records supporting the existence of the complained-of conditions or showing how

9    those conditions are being managed (or not) in prison.  And even if defendant's unsupported

10   assertions are to be taken as true, the complained-of conditions and purported delays in

11   diagnosis are not enough to warrant a sentence reduction.

12   　　　　*Second*, the purported "infectious disease outbreaks" at FCI Victorville do not constitute

13   an extraordinary and compelling reason.  Defendant has not made out that FCI Victorville is

14   undergoing (or at imminent risk of) an "ongoing outbreak of infectious disease."  He cites only

15   his observation of cold-like symptoms among prisoners and guards, and otherwise blames the

16   lack of evidence of an outbreak on the BOP's failure to document the purported outbreak.

17   That is not enough.  And even if there were an outbreak, defendant fails to show that he is "at

18   increased risk of suffering severe medical complications or death as a result of exposure."  He

19   states (without evidence) that he is a "sickle cell trait carrier."  The National Institute of

20   Health's Heart, Lung, and Blood Institute explains:

21   　　　　　　　　Sickle cell *trait* is different from sickle cell *disease*. . . . People
　　　　　　　　with sickle cell *trait* have only one copy of the sickle cell gene and
22   　　　　　　　　usually do not have symptoms of the disease. Sickle cell trait does
　　　　　　　　not turn into sickle cell disease. . . . Most people who have sickle
23   　　　　　　　　cell trait never experience serious medical problems.

24   *What is Sickle Cell Trait?*, NATIONAL HEART, LUNG, AND BLOOD INSTITUTE (August 22, 2024),

25   https://www.nhlbi.nih.gov/health/sickle-cell-disease/sickle-cell-trait (emphasis added).

26   　　　　Defendant does not explain why being a sickle cell *trait* carrier renders him more

27   vulnerable to the purported disease outbreak.

28

United States District Court
Northern District of California

5

### B. FAMILY CIRCUMSTANCES.

"The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition" may constitute an extraordinary and compelling reason. U.S.S.G. 1B1.13(b)(3)(A). Defendant argues that his 30-year-old daughter "has had life altering experiences in which [*sic*] has led to severe depression and mental anguish rendering her incapable of selfcare because of her current mental condition and the petitioner is the only available caregiver to provide the round the clock care necessary she is in need of" (Dkt. No. 877 at 3). *First*, defendant provides no medical documentation establishing that his daughter is incapable of self-care. *Second*, defendant falls far short of the "robust evidentiary showing that [he] is the only available caregiver." *United States v. Bragg*, No. 12CR3617-CAB, 2021 WL 662269, at *2 (S.D. Cal. Feb. 19, 2021) (Judge Cathy Bencivengo). He provides no evidence or information about who has been caring for his daughter thus far, why that caregiver is unavailable, or that no other caregiver is available.

### C. UNUSUALLY LONG SENTENCE.

Defendant argues that he is entitled to release under Section 1B1.13(b)(6). A defendant who has received an "unusually long sentence" may qualify for sentence reduction if he "has served at least 10 years of the term of imprisonment" and there has been a change in the law that would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. 1B1.13(b)(6). Defendant has not served ten years of his sentence and there has been no change in the law. He complains instead that his sentence was excessive at the time it was imposed. Section 1B1.13(b)(6) contemplates reduction where a subsequent change in the law has rendered a sentence "unusually long," not where defendant feels that he has been given too harsh a sentence. The latter argument is one for direct appeal, not compassionate release.

### 2. DANGER TO THE COMMUNITY.

In addition to an "extraordinary and compelling reason," Section 1B1.13 also conditions sentence reduction on a finding that "[t]he defendant is not a danger to the safety of any other

person or to the community."  U.S.S.G. 1B1.13(a)(2).  Defendant continues to present a

danger to the safety of both the community and the targets of the plot for which he was

convicted.  He orchestrated a potentially deadly terror campaign over the course of several

years, all of it driven by perceived injustices related to his inheritance.  As stated during

sentencing:

> Revenge was the motive. A very common thread throughout this
> terrible story, Mr. Jah committing revenge.  In my 22 years on the
> Court I have not seen a case that posed such a danger to the public
> as Mr. Jah.  And I say that recognizing that Mr. Jah has redeeming
> qualities, including his intelligence, his ability to make a speech,
> his business acumen.  But he has a monumental flaw of intense
> self-centeredness such that if anyone crosses him, he doesn't
> forget, and he seeks revenge and doesn't let it go.  I've never seen
> such a case.  And every one of the people who were on that hit list
> were in danger then and were in danger as long as he was out of
> custody and, I hate to say it, will be in danger when he is released .
> . . . [I]t's chillingly frightening . . . this strong innate need to seek
> revenge.

(Dkt. No. 701 at 94, 96).  Defendant continues to be a danger to the public at large, and those

he considers his enemies.  The present motion provides no reason to believe otherwise.

**3.    SECTION 3553(A) FACTORS.**

Defendant's existing sentence remains the minimum sentence necessary to comply with

the sentencing factors set forth in Section 3553(A).  A November 2024 order denying

defendant's motion to reduce his sentence under a retroactive sentencing guideline amendment

found that "a sentence of 216 months [remains] the minimum sentence necessary to effectuate

the sentencing goals set out by Congress" (Dkt. No. 863 at 4).  That analysis is incorporated

here.  In sum, defendant orchestrated a wide-ranging conspiracy to firebomb individuals (and

their families) on a literal "hit list."  The existing sentence is necessary to reflect the

seriousness of the offense, to provide just punishment, to deter defendant and others from

resorting to such extreme crimes, and to protect the public and those victims on defendant's hit

list from further harm.

United States District Court
Northern District of California

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

Defendant has not made out an "extraordinary and compelling reason" warranting a sentence reduction, defendant remains a danger to the safety of the community, and defendant's existing sentence remains the minimum necessary sentence under the sentencing factors set forth in Section 3553(A).  Defendant's motion is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 4, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8